**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

| | |
|---|---|
| Occidental Fire & Casualty Company of North Carolina, | Civil No.: 16-CV-1174 (PJS/FLN) |
| Plaintiff, | |
| v. | **INTERSTATE RISK PLACEMENT, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** |
| Interstate Risk Placement, Inc., | |
| Defendant and Third-Party Plaintiff, | |
| v. | |
| Olson Insurance Agency, Inc., and Mary Oertli, | |
| Third-Party Defendants. | |

**INTRODUCTION**

This dispute relates to damages claimed by Plaintiff Occidental Fire & Casualty Company of North Carolina ("Occidental") under a policy insuring Thomas Hipp and Hipp Trucking Inc., (collectively "Hipp"). Occidental seeks damages from Defendant/Third-Party Plaintiff Interstate Risk Placement ("IRP") for payments Occidental made in excess of the stated $500,000 liability limits plus attorney's fees. IRP seeks recovery from Olson Insurance Agency, Inc. ("Olson Insurance") and Mary Oertli ("Oertli") in the event IRP is obligated to pay Occidental.

This Court should declare that Occidental's claims are time barred because it suffered compensable damages on August 1, 2008. Alternatively, this Court should declare that Occidental caused its own damages in the underlying coverage action

("Coverage Action"). In the Coverage Action, the court declared Occidental's policy provided coverage to Hipp for an accident on March 10, 2009 and the coverage limits were $1,000,000 (instead of the $500,000 Hipp intended) because Occidental failed to introduce critical evidence to support Occidental's "reasonable expectations" argument and Occidental failed to assert a reformation defense. To the extent that Occidental incurred attorney's fees regarding the ambiguity argument, Occidental has failed to introduce admissible evidence to support its purported damages. Finally, IRP was authorized to bind Occidental to the $1,000,000 policy, therefore, under the *Julien* doctrine, IRP did not cause Occidental's damages and is only liable for the premium differences.

## STATEMENT OF THE RECORD

*Affidavit of Rolf E. Sonnesyn* and attached exhibits:

Exhibit A: Deposition of Julie Lindemann, taken May 3, 2012 ("Lindemann Dep.")

Exhibit B: Deposition of Mary Oertli, taken March 22, 2017 ("Oertli Dep.")

Exhibit C: Deposition of Nathan R. Sutton, taken June 20, 2017 ("Sutton Dep.")

Exhibit D: Deposition of Thomas Hipp, taken February 13, 2017 ("Hipp Dep."

Exhibit E: Deposition of Diane Fuller, taken June 20, 2017 ("Fuller Dep.")

Exhibit F: Occidental v. IRP Complaint with referenced Exhibits F, I, & J ("Occidental Compl.")

Exhibit G: Affidavit of Service of Occidental v. IRP Summons and Complaint

Exhibit H: *Standby Technical Services, Inc. v. F & M Agency, Inc.*, Civil No. 14-1857 (DWF/BRT) (D. Minn. Jun. 1, 2015)

Exhibit I: *Suncom, LLC v. Feuling*, A16-0625, 2017 WL 474419 (Minn. Ct. App. Feb. 6, 2017)

2

*Affidavit of Britton D. Weimer* and attached Exhibit 1: Expert Opinion of Britton D. Weimer; and

*Affidavit of Diane Fuller*.

## STATEMENT OF ISSUES

1.  **Are Occidental's claims barred by the statute of limitations?**

2.  **Do Occidental's negligence and breach of contract claims fail on the basis of lack of causation because Occidental caused its own damages when it failed to introduce evidence to support its reasonable expectations argument and failed to seek the remedy of reformation in the underlying Coverage Action?**

3.  **Whether Occidental failed to mitigate its damages by not introducing evidence to support its "reasonable expectations" argument and asserting reformation in the Coverage Action, therefore, it is barred from recovering?**

4.  **Alternatively, are Occidental's damages limited to the difference in premiums for the $1,000,000 coverage because IRP was authorized to bind Occidental and Occidental would have accepted the $1,000,000 coverage?**

## FACTUAL BACKGROUND

Parties

Occidental is an insurance company that issued a nontrucking liability ("NTL") policy[1] to O. M. Trucking. (*Sonnesyn Aff., Ex. A:* Lindemann Dep., 15:23-25; 30:4-16.)

O. M. Trucking was a shell corporation that held an insurance policy under which Olson Insurance Agency, Inc. ("Olson Insurance") sold certificates of insurance to truck drivers. (*Sonnesyn Aff., Ex. B:* Oertli Dep., 20:5-15.)

Mary Oertli ("Oertli") was an owner of Olson Insurance and an insurance agent selling insurance through Olson Insurance. (Oertli Dep., 22:9-10; 17:24-2.)

---

[1] NTL policies provide liability coverage to truckers when they are using their trucks for personal use and are not furthering the business of a motor carrier. (Lindemann Dep., 25:23-26:1.)

3

IRP underwrites insurance policies for transportation risks. (*Sonnesyn Aff., Ex. C:* Sutton Dep., 9:8-12, 10:5-9.) IRP was the underwriter for the O. M. Trucking Policy. (Sutton Dep., 4-19.)

Thomas Hipp is the sole owner of Hipp Trucking, Inc. (*Sonnesyn Aff., Ex. D:* Hipp Dep., 7:8-12.) Hipp Trucking leased his truck to Airline Transportation Special ("ATS"). (Oertli Dep., 44:11-18.) Hipp purchased NTL coverage under the O. M. Trucking Policy. (Sutton Dep., 52:8-20; Hipp Dep., 21:6-22:8.)

Occidental, IRP, and Olson Insurance Relationship

From at least 2001 and through 2009, IRP was a managing agent for Occidental which granted IRP the authority to underwrite risks and issue policies and endorsements within guidelines set by contract. (Sutton Dep., 17:22-18:7.) In 2002, IRP entered into a general agency agreement ("the Agreement") with Acceptance Indemnity Insurance Company, which subsequently became Occidental. (Sutton Dep., 19:14-24, Ex. 58; 18:13-19.) The Agreement was the operative agreement in 2008 and 2009. (Sutton Dep., 20:1-14.) IRP identified insurance companies and negotiated premium rates for policies that Olson Insurance would then sell to truckers. (Oertli Dep., 117:3-16.)

As of June 2007, NTL policies were considered "submit" policies which required IRP to get Occidental's approval to grant the policy. (Sutton Dep., 33:5-9; 23:9-13.) IRP submitted the policy and underwriting documents to Occidental for approval and rate adjustments. (Lindemann Dep., 18:2-6.) However, Occidental delegated to IRP the task of underwriting the Policy for the purpose of accepting or rejecting truck drivers for liability insurance. Once the O. M. Trucking Policies were approved by Occidental at the

time of renewal and initial inception, IRP did not need further approval from Occidental to add or delete truckers to the respective policies. (Fuller Aff., ¶ 6.)

Olson Insurance was an appointed agent authorized to sell insurance policies on behalf of Occidental in Minnesota. (Oertli Dep., 88:20-89:10.)

O. M. Trucking Policies

Through Olson Insurance, O. M. Trucking purchased two separate NTL policies from Occidental, one with a $500,000 liability limit and one with a $1,000,000 liability limit. (Oertli Dep., 34:17-36:21.) Each policy had different premiums and policy numbers. (Oerlti Dep., 38:2-5; 113:5-7.) Olson Insurance had authority to bind Occidental to either the $500,000 or $1,000,000 coverage. (Oertli Dep., 37:18-38:1.) Olson Insurance would issue a certificate of insurance to the trucker for the coverage limit ($500,000 or $1,000,000) requested by the trucker. (Oertli Dep., 111:5-13.)

IRP determined trucker eligibility for coverage under the O. M. Trucking policies and if eligible, the trucker could purchase $1,000,000 coverage. (Lindemann Dep., 171:10-23.)  From August 1, 2008 to August 1, 2009, O. M. Trucking had a $500,000 policy through Occidental with a policy number ending in 12552 ("Policy 12552"). (Oertli Dep., 63:17-24, 129:3-15, Ex. 29.) Hipp Trucking was issued Certificate No. 9611 under Policy 12552. (Oertli Dep., 129:23-130:5, Ex. 29.)

A part of Policy 12552, the Monthly Payment and Reporting Endorsement, Form No. AA1903, mistakenly indicated a liability limit of $1,000,000. (Oertli Dep., 130:6-15., Ex. 29.) IRP acknowledges its mistake. (*Sonnesyn Dep., Ex. E*: Fuller Dep., 73:10-24.) The Policy and attached endorsements are prepared by IRP. (Oertli Dep., 140:10-15.)

5

Upon receiving the Policy and attached endorsements, Olson Insurance verified the policy number, dates of coverage, and limit of liability were correct and then checked a few of the truckers listed to ensure they received the appropriate certificate of insurance. (Oertli Dep., 141:17-142:9.)

Hipp received Certificate No. 9611 which indicated a $500,000 coverage limit through Occidental. (Hipp Dep., 21:6-22:8, Ex. 7.) It was Hipp's intent to have $500,000 in NTL coverage on the Volvo. (Hipp Dep., 22:5-8.) It was the intent of Olson Insurance as the agent to provide Hipp with $500,000 in NTL insurance. (Oertli Dep., 32:15-23.) Occidental never intended to provide limits of $1,000,000 under Policy 12552. (*Sonnesyn Aff., Ex. F:* Occidental Compl., Ex. L, p. 2 at ¶ 3.) Instead, Occidental's intent was to insure Hipp for $500,000. (Occidental Compl. ¶ 26; Lindeman Dep., 116:18-19.) It was IRP's intent that Hipp be insured for $500,000. (Fuller Dep., 74:9-11; Sutton Dep., 127:1-6.)

Underlying Accident and Coverage Lawsuit

On March 10, 2009, Hipp, while driving his 2009 Volvo semi-truck, when he was involved in an auto accident which resulted in the death of Amy Soczynski. (Occidental Compl. ¶ 19; Hipp Dep., 20:6-11.) A wrongful death action was brought on behalf of Soczynski's Estate against Hipp ("Soczynski Action"). (Occidental Compl. ¶ 20.)

Occidental conducted an investigation regarding coverage for the Soczynski Action and determined the NTL Policy did not provide coverage for the accident on the basis that Hipp was engaged in activities benefitting the carrier to which Hipp leased his vehicle at the time of the accident. (Occidental Compl. ¶ 23.)

Soczynski's Estate settled with Hipp via a *Miller-Shugart* agreement and the Estate acquired the right to sue Occidental for coverage under the Policy. (Occidental Compl. ¶ 24.)

Occidental brought a declaratory judgment action in federal court seeking judicial determination on whether the Policy provided coverage for the March 2009 accident ("the Coverage Action"). (Occidental Compl. ¶ 25, Ex. F.) Occidental sought a declaration that it had no duty to indemnify Hipp. (Occidental Compl., Ex. F, p. 10.) Occidental did not seek a declaration that the Policy should be reformed to reflect the intentions of the parties that the Policy provide $500,000 liability limits. The Estate opposed and asserted that the per occurrence liability coverage limit was $1,000,000, not $500,000. (Occidental Compl. ¶ 26.)

Both Occidental and the Estate moved for summary judgment as to coverage and the Policy's per occurrence coverage limit. (Occidental Compl. ¶ 29.) Occidental relied on a "reasonable expectations" argument to support its position that the Policy's liability limit was $500,000. (Occidental Compl., Exs. I and J.)

In January 2013, the court issued an order granting summary judgment in favor of the Estate, holding that the Policy applied and that the per occurrence coverage limit was $1,000,000. (Occidental Compl. ¶ 31, Exhibit I.) Occidental was not successful in its appeal of the district court's decision. (Occidental Compl. ¶ 33.) The Eighth Circuit explained that Occidental's "reasonable expectations" argument failed because the record lacked evidence from Hipp regarding his coverage expectations. (Occidental Compl., Ex. J at p. 11.)

7

In the Coverage Action, Occidental never sought reformation of the Policy to reflect the parties' intentions that the Policy provided $500,000 liability limits. Occidental and the Estate settled the Coverage Action and Occidental paid $1,295,621 to the Estate. (Occidental Compl. ¶ 34.) Britton D. Weimer, an attorney practicing in commercial insurance coverage and defense for twenty-nine years, concludes that had Occidental introduced evidence of Hipp's intent to have only $500,000 limits and had Occidental pled reformation, "the Court in the underlying Occidental Coverage Case would almost certainly have reformed the endorsement to reflect the intended $500,000 limits" and it is "highly probable that the Court…would have enforced the $500,000 limits under the reasonable-expectations doctrine." (Weimer Aff., Ex. 1 at p. 10 ¶ 14 and p. 12 ¶ 5.) Mr. Weimer's expert opinion is unrebutted. (*Sonnesyn Aff.*, ¶ 2.)

Occidental perfected service of the summons and complaint on IRP on April 6, 2016. (*Sonnesyn Aff., Ex. G:* Aff. of Service.)

## ARGUMENT

### I.    Legal Standard

Summary judgment is appropriate if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Courts deciding a summary judgment motion must view the evidence and the inferences that may be drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). Summary judgment is an integral part of the Federal Rules which are designed "to secure the just, speedy, and

8

inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing there are no genuine issues of material fact and therefore, is entitled to judgment as a matter of law. *Enter. Bank v. Magna Bank of Mo.*, 92 F. 3d at 747. To prevent a grant of summary judgment, the nonmoving party must demonstrate the existence of specific disputed facts which are material and that create a genuine issue for trial. *Krenik v. Cnty. of LeSeuer*, 47 F.3d 953, 957 (8th Cir. 1995). In opposing a motion for summary judgment, the nonmoving party cannot rest upon its allegations and denials in its pleadings. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

Minnesota law applies to this case. "Federal courts sitting in diversity apply the forum state's statute of limitations." *Zutz v. Case Corp.*, 422 F.3d 764, 774 (8th Cir. 2005). The law of the forum state applies in a diversity action alleging negligence. *Heatherly v. Alexander*, 421 F. 3d 638, 641 (8th Cir. 2005.) Under Minnesota law, a statute of limitations is procedural, therefore, Minnesota's laws regarding limitations on the time for commencing an action governs. *Fredin v. Sharp*, 176 F.R.D. 304, 308 (D. Minn. 1997). Occidental filed suit in Minnesota state court which IRP subsequently removed to federal court, therefore, Minnesota law governs because this Court is sitting in diversity.

Under Minnesota's Uniform Declaratory Judgments Act, courts have the power to declare a party's legal "rights, status, and ... relations" and issue a declaratory judgment. *Weavewood, Inc. v. S & P Home Inv., LLC*, 821 N.W.2d 576, 579 (Minn. 2012) (quoting

Minn. Stat. § 555.01)). "A declaratory judgment is a 'procedural device' through which a party's existing legal rights may be vindicated…[if] a justiciable controversy exists." *Id*.

## II.   Occidental's claims are time barred because the statute of limitations began to run when the Policy became effective on August 1, 2008 and Occidental did not receive the appropriate premium.

The purpose of a statute of limitations is to ". . . spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost." *Chase Securities Corp. v. Donaldson,* 325 U.S. 304, 314, 65 S.Ct. 1137, 1142, *reh'g dened* 325 U.S. 896, 65 S. Ct. 1561 (1945). See also *Abbotts v. Campbell,* 551 F. 3d 802, 806 (8th Cir. 2008) (statute of limitations for the general purpose of repose, that is, the interest of a defendant and society in freedom from stale claims). A civil action is commenced when the summons is served on the defendant. Minn. R. Civ. P. 3.01(a).

In Minnesota, a breach of contract claim or claims based on negligent conduct must be brought within six years. Minn. Stat. § 541.05, subd. 1(1) and (5). In *Parkhill v. Minnesota Mutual Life Insurance Company,* the federal court applied the statute of limitations to a breach of contract cause of action against an insurer and an insurance agent. 174 F. Supp. 2d 951 (D. Minn. 2000). The court stated a breach of contract action "accrue[s] at the time of the breach, even though actual damages occur later." *Id.* at 956 *quoting Levin v. C.O.M.B. Co.,* 441 N.W.2d 801, 803 (Minn. 1989). This rule applies even in situations where actual damages resulting from the breach of contract do not manifest themselves or occur until after the breach of contract. *See Jacobson v. Bd. Of Trustees of the Teachers Ret. Ass'n.,* 627 N.W.2d 106, 110 (Minn. Ct. App. 2001)

(quotation omitted). The general negligence statute of limitations has been held to be applicable to professional malpractice claims. *Ames & Fisher Co., II, LLP v. McDonald*, 798 N.W.2d 557, 562 (Minn. Ct. App. 2011).

Although section 541.05, subdivision 1 does not specify when the statute of limitations period begins to run, the Minnesota Supreme Court has held that the limitations period "begins to run when the cause of action accrues, that is, when the plaintiff can allege sufficient facts to survive a motion to dismiss for failure to state a claim upon which relief can be granted." *Antone v. Mirviss,* 720 N.W.2d 331, 335 (Minn. 2006). Minnesota has adopted the so-called "damage-accrual rule" which means the statute of limitations begins to run when "some damage" has occurred. *Id.* at 335-36. Specifically, "a cause of action accrues, and the statute of limitations begins to run, on the occurrence of *any compensable damages*, whether specifically identified in the complaint or not." *Id.* at 336 (emphasis added). Importantly, under *Antone*, the underlying dispute need not be fully and finally resolved in order for the statute of limitations to begin running; rather, the statute of limitations begins to run with the occurrence of any compensable damage. *Id.* Moreover, the damages which trigger the start of the statute of limitations period need not be those asserted in the complaint. *Id*.

In *Antone*, the plaintiff brought a legal malpractice claim on the basis of a negligently drafted antenuptial agreement. *Id*. at 332-34. As a result of the negligently prepared antenuptial agreement, the plaintiff's ex-wife was awarded a portion of the plaintiff's premarital estate when he believed it was protected by the antenuptial agreement. *Id*. The plaintiff alleged negligence and breach of contract, alleging his ex-

11

wife received more than she would have if the antenuptial agreement had been drafter properly. *Id.* at 334. The court concluded that the plaintiff's claims were time-barred because under the "damage-accrual" rule, the plaintiff suffered "some damage" when he entered into the marriage because his wife was "legally entitled to make a claim upon a portion of any appreciation of [the plaintiff's] premarital property." *Id.* at 337-38.

A similar result occurred in *Veit v. ProSource Technologies, Incorporated*. In *Veit*, the plaintiff sued an appraisal company for professional negligence. 879 N.W.2d 8, 9 (Minn. Ct. App. 2016). In 2006, the plaintiff sought the appraisal to establish the value of property that was being donated to charity. *Id.* The appraisal was completed and paid for in 2006. *Id.* The property was donated in 2006. *Id.* On his 2006 taxes, the plaintiff took a charitable-contribution tax deduction based on the defendant's appraised value and carried over the amount that exceed the permitted deduction limits into 2007, 2008, and 2009. *Id.* In 2011, the plaintiff was notified by the IRS that it was his charitable-contribution deduction because the defendant's appraisal was not a qualified appraisal. *Id.* The tax dispute was settled in 2013 which resulted in the plaintiff incurring additional tax, penalties and interest. *Id.* The defendant moved for summary judgment on the basis that the plaintiff's claims were time barred. *Id.* The district court applied the "damage-accrual" rule and concluded the plaintiff suffered damages when he paid for the appraisal that was not qualified and when he donated the property in anticipation of tax benefits that did not manifest. *Id.* at 10-11. The district court held that each of those damages started the running of the statute of limitations. *Id.* The court of appeals affirmed the district court's grant of summary judgment. *Id.* at 11.

Following the reasoning adopted in *Antone* and *Veit*, Occidental first suffered compensable damages when Policy 12552 became effective on August 1, 2008 and it did not receive the appropriate premiums for $1,000,000 liability limits coverage. (Lindemann Dep., 195:19-24 "Q: …[B]ecause that $1 million was bound for all of those truckers, that premium was not collected by Occidental for $1 million of coverage on all those truckers, correct? A: Correct.") Thus, the statute of limitations on Occidental's claims ran on July 31, 2014. Occidental did not serve its summons and complaint until April 6, 2016.

Occidental may argue that its claim for indemnity is not barred by the statute of limitations because its cause of action did not accrue until it paid more than it was obligated (i.e. more than $500,000). *See Metro. Prop. & Cas. Ins. Co. v. Metro. Transit Comm'n,* 538 N.W.2d 692, 695 (Minn. 1995) (noting that under common law, the right of indemnity does not accrue until the liability of the party seeking indemnity "has become finally fixed and ascertained, or until after the claimant has settled or has paid the judgment or more than a commensurate share of it").

However, this case does not involve indemnity under an insurance contract. Rather it involves claims based on professional negligence. *See* Occidental Compl. ¶¶ 38, 39 and 41 ("[w]ere it not for IRP's negligence with respect to the policy limit stated in Form AA1903"; "Occidental was forced to incur substantial attorneys' fees…'to address the policy limits ambiguity in the [Occidental Policy] cause by IRP's negligence'"; IRP was "obligated to indemnify Occidental for losses…which…were caused by IRP's negligence".) Moreover, Minnesota courts have made it clear that a plaintiff cannot evade

13

a statute of limitations defense by pleading only those damages that are not time-barred. *See Antone v. Mirviss*, 720 N.W.2d at 336 (holding "that a cause of action accrues, and the statute of limitations begins to run, on the occurrence of any compensable damage, whether specifically identified in the complaint or not").

In a similar case filed in this Court, the presiding judge, Judge Donovan Frank, concluded that an insured and insurer's claims breach of contract and negligence against an insurance agency were professional malpractice and applied the "damage-accrual" rule to determine whether a statute of limitations defense applied. *Standby Technical Services, Inc. v. F & M Agency, Inc.*, Civil No. 14-1857 (DWF/BRT) (D. Minn. Jun. 1, 2015) (unpublished). (*Sonnesyn Aff., Ex. H.*) *See also Christianson v. Conrad-Houston, Ins.,* 318 P.3d 390 (AK 2014) (determining that insured was aware of some damages allegedly caused by insurance broker's failure to procure appropriate insurance when insurance companies denied the tender of defense and insured was forced to hire own attorney); *Wallace v. Helbig,* 963 S.W.2d 360 (Mo. Ct. App. 1998) (holding that the knowledge of precise damages is not necessary for statute of limitations to being running on a cause of action against an insurance agent/broker).

Occidental's statute of limitations for both a breach of contract claim and negligence claim began to run when the O. M. Trucking Policy became effective on August 1, 2008 because it suffered some compensable damage – the premium difference between a \$500,000 liability limits policy and a \$1,000,000 liability limits policy. Because the statute of limitations on Occidental's claims ran on July 31, 2014 and Occidental did not serve its summons and complaint until April 6, 2016, this Court

14

should declare the Occidental's claims are time barred and IRP is not obligated to indemnify Occidental.

**III.    Occidental's causes of action fail on the element of causation because Occidental's damages are due solely to its failure to provide admissible evidence in support of its "reasonable expectations" argument and its failure to seek the remedy of reformation in the underlying Coverage Action.**

To prove a negligence claim, a plaintiff must show the defendant breached a duty of care and that breach proximately caused the plaintiff's damages. *Domagala v. Rolland*, 805 N.W.2d 14, 22 (Minn.2011). "A plaintiff…is barred from recovering under a contract theory absent an injury from the claimed breach." *Lipka v. Minnesota Sch. Employees Ass'n, Local 1980*, 537 N.W.2d 624, 631 (Minn. Ct. App. 1995), aff'd, 550 N.W.2d 618 (Minn. 1996).

A.   *Hipp intended and reasonably expected Policy 12552 to provide liability limits of $500,000.*

Generally, irreconcilable endorsements in a policy are considered ambiguous and construed against the drafter unless such a construction would result in coverage beyond the reasonable expectations of the insured. *Curtis v. Home Ins. Co.*, 392 N.W.2d 44, 45 (Minn. Ct. App. 1986). If construing the ambiguity against the drafter results in coverage limits greater than the amount the insured intended, then the intended coverage limits prevail. *Id.*

Occidental failed to introduce a critical piece of evidence in the Coverage Action which would have resulted in the court concluding the limits of coverage under the Policy was $500,000. The Eighth Circuit's decision in the Coverage Action points to the lack of any evidence in the record as to what Hipp reasonably expected his coverage to be.

> Unlike the situation involved in <u>Curtis</u>, there is no affidavit directly from…Hipp stating that he intended his…policy to be $500,000. Nor is Hipp even directly identified as the personal source of the hearsay referenced by the plaintiff's attorney in the settlement letter... Thus, contrary to Occidental's contention, there is no record evidence…indicating what…Hipp's reasonable expectations were. The district court therefore did not err when it construed the admittedly ambiguous policy against Occidental to conclude it provided $1 million in coverage.

*See* Occidental Compl., Ex. J: *Occidental Fire & Cas. Co. v. Soczynski*, No. 13-2679, at p. 11 (8th Cir. Sept. 2, 2014). The failure to solicit information from Hipp as to his expectations and make it a part of the record in the Coverage Action is the reason Occidental was forced to pay more than the intended $500,000, not IRP's mistaken reference on Form No. AA1903 attached to the Policy. In the Coverage Action, Hipp was deposed without any inquiry by Occidental into his intent. Additionally, Occidental did not seek an affidavit or declaration from Hipp. *See* Lindemann Dep., 145:3-15 (discussing court's decision, the lack of evidence as to Hipp's intent despite being deposed twice in the Coverage Action). Hipp was deposed in this case and unequivocally stated he intended $500,000 in liability coverage. *See* Hipp Dep., 22:5-8. In the unrebutted opinion of Britton D. Weimer, had Occidental introduced evidence of Hipp's intent in the Coverage Action, the court "would have enforced the $500,000 limits under the reasonable-expectations doctrine." *See* Weimer Expert Report, p. 12 ¶ 5.

IRP recognizes that Occidental may have incurred attorneys' fees related to the ambiguity of Policy 12552. However, Occidental has failed to prove those fees. Occidental's corporate representative, Julie Lindemann, is unable to identify which fees were related to the ambiguity issue versus coverage issue. (Lindemann Dep., 198:9-

16

199:4.) Rather, Ms. Lindemann indicated she does not know what the accurate figure is of fees incurred and that the $15,000 was the amount indicated by Occidental's attorney. (*Id*.) Lindemann's testimony is inadmissible hearsay and she lacks the foundation to opine as to the reasonableness of the fees. Fed. R. Evid. 802; *Besett v. Hegg*, 890 F. Supp. 2d 1076, 1092 (D. Minn. 2012); *see also Suncom, LLC v. Feuling*, A16-0625, 2017 WL 474419, *7 at fn. 3 (Minn. Ct. App. Feb. 6, 2017) (unpublished) (noting that since adopting the lodestar method, courts rely upon expert testimony in determining attorney-fee awards). (*Sonnesyn Aff.*, Ex. I.) Lindeman, while a licensed attorney, has never practiced law and did not even review any of the invoices to determine if the $15,000 was an accurate figure. (Lindemann Dep., 208:21-22, 198:19-199:4.) Finally, Occidental has not identified an expert to testify as to the reasonableness of the attorneys' fees incurred.

B. *Policy 12552 could have been reformed to reflect the intent of the parties.*

Reformation of a contract is a remedy which alters or amends the contract's terms to reflect the true intent of the parties. *SCI Minnesota Funeral Servs., Inc. v. Washburn-McReavy Funeral Corp.*, 779 N.W.2d 865, 870 (Minn. Ct. App. 2010), *aff'd,* 795 N.W.2d 855 (Minn. 2011). Reformation based on a mutual mistake requires the parties to "agree as to the content of the document but that somehow through a scrivener's error the document does not reflect that agreement." *Id.* (quoting *Nichols v. Shelard Nat'l Bank*, 294 N.W.2d 730, 734 (Minn. 1980)). The evidence must be "clear, unequivocal, and convincing." *Id.* (quoting *Golden Valley Shopping Ctr. Inc. v. Super Value Realty, Inc.*, 256 Minn. 324, 329, 98 N.W.2d 55, 58 (1959)).

17

The evidence is clear, unequivocal, and convincing that the parties intended Hipp's NTL coverage to be $500,000. In this case, Hipp testified that was his intent. Oertli testified that was her intent and Olson Insurance's intent. Sutton and Fuller testified that was IRP's intent. Occidental also intended Hipp's coverage limits to be $500,000. Form No. AA1903, which contained the erroneous reference to a $1,000,000 limit of liability, was attached to Policy 12552 – O. M. Trucking's $500,000 Policy. Furthermore, this was the only reference in the entirety of Policy 12552 and its attached documents that indicated a $1,000,000 limit of liability.

Finally, Occidental not only failed to plead reformation but failed to introduce evidence that would have supported the defense of reformation. *See* Weimer Expert Report, p. 9 ¶ 12. Mr. Weimer opines that had Occidental done so, the court deciding the Coverage Action would have reformed the endorsement to reflect the intended $500,000 limits. *Id*. at p. 10 ¶ 14.

This Court should rule as a matter of law that Policy 12552 would have been reformed to provide a limit of liability of $500,000. Had reformation been pursued in the Coverage Action, Occidental's indemnification to Hipp would have been limited to $500,000. IRP did not cause Occidental to provide $1,000,000 of liability coverage; Occidental caused it. Therefore, Occidental is not entitled to any indemnification from IRP for the excess liability limits it paid beyond $500,000.

Summary judgment should be granted and a declaration made that Occidental is not entitled to indemnification from IRP because Policy 12552 could have been reformed to reflect the parties' intentions in the Coverage Action.

18

**IV.   Occidental failed to mitigate its damages by not introducing evidence to support its "reasonable expectations" argument and asserting reformation in the Coverage Action, therefore, it is barred from recovering.**

A plaintiff's unreasonable failure to mitigate its damages is a species of "fault" under Minnesota's Comparative Fault Act and is considered when determining the damages to which the plaintiff may be entitled. Minn. Stat. § 604.01, subd. 1a. "The apportionment of [fault] must be left to the jury except where the evidence is undisputed and the factfinder could come to only one conclusion." *Jack Frost, Inc. v. Engineered Bldg. Components Co.*, 304 N.W.2d 346, 350 (Minn. 1981).

Occidental asserts IRP breached the agreement between Occidental and IRP when IRP mistakenly included the endorsement stating $1,000,000 of liability coverage. But Occidental is obligated to mitigate its damages for its contract claim, too. *Lesmeister v. Dilly*, 330 N.W.2d 95, 103 (Minn. 1983); Bass v. Equity Residential Holdings, LLC, (Minn. Ct. App. 2004); *Deutz-Allis Credit Corp. v. Jensen*, 458 N.W.2d 163, 166 (Minn. Ct. App. 1990). In this instance, Occidental did not act reasonably to limit its damages.

Here, a factfinder could come to only one conclusion – that Occidental's failures in the Coverage Action resulted in Occidental having to pay more than the stated limits of $500,000, not IRP's initial mistake. Had Occidental obtained evidence of Hipp's intent and entered it into the record of the Coverage Action, the court would have concluded the limit of coverage was $500,000 under the "reasonable expectations" doctrine. Furthermore, had Occidental sought reformation of the O.M. Trucking Policy, the court would have reformed the contract and corrected the scrivener's error to reflect Hipp's contracted-for $500,000 liability coverage under the O. M. Trucking Policy in the

19

Coverage Action. Any purported damages in the form of attorneys' fees fails here for the same reasons discussed above. *See* Section III.A.

Summary judgment is appropriate because Occidental failed to mitigate its damages and it has no admissible evidence to substantiate its claim for attorneys' fees.

**V.    Alternatively, Occidental's damages are limited to the difference in premiums because IRP was authorized to grant Hipp coverage under O.M. Trucking's $1,000,000 policy and Occidental would have accepted Hipp as an insured under the $1,000,000 policy.**

While Occidental must approve the issuance of the O. M. Trucking policies each year at renewal and inception, it authorized and granted IRP the power to determine whether truckers seeking a certificate of insurance under either O. M. Trucking policy were qualified for the coverage they sought. In other words, if Hipp had requested Oertli to procure coverage under the $1,000,000 policy, IRP would have been authorized to approve him for coverage. Moreover, Occidental cannot identify anything in the underwriting criteria that indicates Hipp did not meet the underwriting criteria for the $1,000,000 limit of liability. (Lindemann Dep., 194:14-195:6.)

*Julien v. Spring Lake Park Agency Incorporated* is instructive. In *Julien*, a building contractor sued an insurance agency and an insurance company to recover under a builder's risk policy. 283 Minn. 101, 102, 166 N.W.2d 355, 356 (1969). The contractor contacted the insurance agency for a policy and was informed by the agency he was covered. *Id.* The agency never secured a policy through the insurance company. *Id.* The trial court awarded the contractor damages but denied the insurance company's claim for indemnity against the agency. *Id.* The supreme court affirmed and reasoned that the

20

insurance company "failed to show its loss resulted from any dereliction on the part of the [insurance agency]" because the insurance agency had the power to bind the insurance company and the insurance company "acknowledged the policy would have been written had the information been…transmitted." *Id*. at 104-05, 357.

Much like in *Julien*, Occidental's loss did not result from IRP dereliction because IRP was tasked with determining whether Hipp was eligible for coverage under the $1,000,000 policy and Occidental would have accepted IRP's underwriting determinations. Moreover, Occidental cannot identify anything in its criteria that would have rendered Hipp ineligible for coverage under the $1,000,000 policy. Summary judgment is appropriate and this Court should declare that Occidental is not entitled to indemnification from IRP.

## CONCLUSION

IRP's motion for summary judgment should be granted for each of the reasons stated above.

*Respectfully submitted,*

Dated: September 13, 2017

/s/ Rolf E. Sonnesyn
Rolf E. Sonnesyn (#0131027)
Beth L. LaCanne, Esq. (#0397023)
**TOMSCHE, SONNESYN & TOMSCHE, P.A**
610 Ottawa Avenue North
Minneapolis, MN 55422
(763) 521-4499
rsonnesyn@tstlaw.com
blacanne@tstlaw.com
*Attorneys for Defendant and Third-Party*
*Plaintiff Interstate Risk Placement, Inc.*

21