## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Occidental Fire & Casualty Company of North Carolina, | Civil No.: 16-CV-1174 (PJS/FLN) |
| Plaintiff, | **INTERSTATE RISK PLACEMENT, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO OLSON INSURANCE AGENCY'S MOTION FOR SUMMARY JUDGMENT; IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; AND REPLY IN FURTHER SUPPORT OF INTERSTATE RISK PLACEMENT, INC.'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| Interstate Risk Placement, Inc., | |
| Defendant and Third-Party Plaintiff, | |
| v. | |
| Olson Insurance Agency, Inc., and Mary Oertli, | |
| Third-Party Defendants. | |

## <u>INTRODUCTION</u>

Plaintiff Occidental Fire & Casualty Company of North Carolina's ("Occidental") opposition memorandum fails to identify a factual dispute regarding Interstate Risk Replacement's ("IRP") defenses which preclude the damages Occidental is seeking. Occidental's motion for summary judgment should be denied and IRP's motion for summary judgment should be granted.

The motion for summary judgment by Third-Party Defendants Olson Insurance Agency and Mary Oertli ("Olson Insurance and Oertli") should be denied because there is a material fact that is genuinely in dispute – the standard of

care for insurance agents in a multi-tier insurance transaction and whether Olson Insurance and Oertli breached that standard of care.

## STATEMENT OF THE RECORD

***Second Affidavit of Rolf E. Sonnesyn and attached exhibits***:

Exhibit J:   Occidental's Answer to the Counterclaim of Defendants in the Coverage Action

Exhibit K:   Occidental's Memorandum in Support of its Motion for Summary Judgment in the Coverage Action

Exhibit L:   Occidental's Memorandum in Opposition to Defendant Soczynski's Motion for Summary Judgment in the Coverage Action

Exhibit M:   Occidental's Reply Memorandum in Further Support of its Motion for Summary Judgment in the Coverage Action

Exhibit N:   Portions of Occidental's Appellate Brief in the Coverage Action

Exhibit O:   Deposition Transcript of Ryan Myers dated September 26, 2017

Exhibit P:   Ryan Myers's December 4, 2015 Letter to Interstate Risk Placement

Exhibit Q:   Lindemann Deposition, pp. 113-123, Exhibit 43

***Second Affidavit of Diane Fuller dated October 6, 2017***
***Supplemental Affidavit of Jeffrey Maas dated September 28, 2017***
***Supplemental Affidavit of R. Bryan Tilden dated September 29, 2017***

## ADDITIONAL FACTS

In the Coverage Action, Occidental's answer to the counterclaim of the defendants does not assert the defenses of "reasonable expectations" or reformation. *Sonnesyn's Second Aff., Ex. J*. In the Coverage Action, Occidental's motion submissions at the district level do not raise the argument of "reasonable

expectations." (*Sonnesyn's Second Aff., Exs. K to M*) Occidental did not raise the "reasonable expectations" argument until the appeal of the district court's order. (*Sonnesyn's Second Aff., Ex. N, pp. 46*)

Ryan Myers, an attorney at Lind, Jensen, Sullivan & Peterson, represented Occidental in the underlying Coverage Action during which he prepared a letter to Rick Sutton, dated July 12, 2012 in the underlying Coverage Action. (*Sonnesyn's Second Aff., Ex. O, Myers Dep.,* 34:11, 5:12-14, 11:10-13) Occidental did not assert a reformation of contract argument in the Coverage Action. (*Id.* at 33:14-18) When asked if he had contemplated a reformation of contract argument in the Coverage Action prior to July 12, 2012, Myers declined to answer on the basis of attorney work-product privilege. (*Id.* at 31:21-32:11, 33:19-25, 36:6-10) When asked if the purported refusal of Mr. Sutton to cooperate with the July 12, 2012 letter had any effect on Occidental's failure to assert reformation as a legal remedy, Myers declined to answer on the basis of attorney work-product privilege. (*Id.* at 36:12-18)

## CLARIFICATION OF FACTS ASSERTED

1) "The second NTL policy option with a $1 million limit was also a "submit" policy, and IRP never submitted a request to insure Hipp under the second, separate policy." (*Pl. Mem.*, p. 7.)

Occidental approved the issuance of the $1 million NTL policy to O. M. Trucking for coverage years 2007-2008 and 2008-2009. (*Sutton Dep.*, 148:2-3.)

3

IRP only had to seek approval from Occidental at the time of policy renewal and inception. (*Fuller Aff.*, ¶ 6.) IRP did not need to submit each individual trucker seeking coverage to Occidental for approval. (*Id.*)

2)      "IRP admits it only had authority to bind Occidental up to $500,000 for the NTL policy issued to Hipp's Trucking." (*Pl. Mem.*, p. 7.)

The NTL policy was issued to O. M. Trucking, not Hipp's Trucking. Instead, Hipp's Trucking was an insured under the O. M. Trucking NTL policy. IRP had authority to bind Occidental to NTL policies which provided a $500,000 liability limit and a $1 million liability limit.

3) "In response to the July 12 Correspondence, IRP indicated it could not explain the discrepancy between the $1 million policy limits stated on Form AA1902 Monthly Payment and Reporting Endorsement and the $500,000 policy limits stated everywhere else in the Occidental Policy." (*Pl. Mem.*, p. 11.)

IRP disputes that it had any conversations with Occidental's legal counsel in July 2012 or that it received the July 12 Correspondence. (*Sutton Dep.*, 115:6-116:7; 125:23-126:7.)

## ARGUMENT

## I.    LEGAL STANDARD

To avoid summary judgment, the nonmoving party must identify the existence of disputed material facts in its opposition. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). "A fact is material only when its resolution affects the outcome of the case." *Parkhill v. Minnesota Mut.*

*Life Ins. Co.*, 174 F. Supp. 2d 951, 955 (D. Minn. 2000), *aff'd,* 286 F.3d 1051 (8th Cir. 2002) citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party." *Id*.

**II.    OCCIDENTAL'S CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS, THEREFORE, IRP'S MOTION FOR SUMMARY JUDGMENT SHOULD BE GRANTED (AND OCCIDENTAL'S CROSS-MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED)**

The nub of Occidental's argument is Occidental's lawsuit against IRP is an indemnity cause of action, not a professional liability cause of action.

Occidental relies on a label rather than a substantive analysis of its claim. Occidental's indemnity claim is grounded upon a professional liability theory, that is, IRP did not meet its standard of care and because of its negligence, Occidental sustained damages in the form of an extra $500,000 of liability insurance, additional interest, and $15,000 of attorneys' fees incurred because of the $500,000 versus $1 million dispute.

Occidental's Complaint describes IRP's conduct as "tortious." (pp. 10-11, ¶¶ 59 – 61)

Counsel for Occidental, in the December 4, 2015 letter to IRP, articulated the basis for Occidental's indemnity demand. The letter states in pertinent part:

> Were it not for IRP's negligence with respect to the policy limit stated in Form AA1903,

> Occidental would not have been forced to pay $1,295,621. Instead, Occidental would have been required to pay half of that amount, or $647,810.50.
>
> \*\*\*
>
> Therefore, Occidental hereby demands that IRP act in accordance with the terms of the General Agency Agreement and indemnify Occidental for its damages in the amount of $660,000.

(*Sonnesyn's Second Aff. – Ex. P*:  Ryan Myers's 12/4/15 Letter to IRP)

Occidental studiously avoids the use of a professional liability analysis when Occidental argues its Complaint is not barred by the statute of limitations. However, Occidental's retained expert, Jim Leatzow, implies otherwise:

- Mr. Leatzow repeatedly refers to IRP's "error." (Ex. 4 to Larkin Aff., p. 5)

- Mr. Leatzow points to the reason IRP made the mistake was because IRP did not have the proper quality control measure in place. (Ex. 4 to Larkin Aff., p. 6)

- More explicitly, Mr. Leatzow asserts: "Issuing policies correctly is precisely a duty and obligation insurers expect." (Ex. 4 to Larkin Aff., p. 7)

- Mr. Leatzow asserts: "The standard of care for an MGA is different than a retail agent." (Ex. 4 to Larkin Aff., p. 7)

- "As written by the National Underwriter an "agents first duty is to the Insurer (the creator of the agency-principal relationship)." An MGA, as written above, is more than just an agent. An MGA is the equivalent of a "super-agent" given the heightened obligations of trust, competence, and abilities." (Ex. 4 to Larkin Aff., p. 8)

6

- Mr. Leatzow finds significance in the testimony of Diane Fuller from IRP: "As Ms. Fuller admitted, but for IRP's mistake evidenced by their lack of care, quality control, staff oversight and due diligence, all of which resulted in IRP's mistake, there would not have been any Federal Court finding resulting in the higher $1 million limit having to be paid." (Ex. 4 to Larkin Aff., p. 8)

These multiple references to mistake, duty, and standard of care manifest the implication. Professional negligence is the basis of Occidental's lawsuit.

The court might conclude it is a question of fact whether Occidental's lawsuit is a professional liability claim against IRP. Summary judgment is then inappropriate.

### *Occidental's Three Items of Damages.*

Occidental has three damage claims against IRP. One, Occidental did not collect sufficient premium for its exposure because IRP caused Occidental's policy to be issued with a $1 million liability limit. Two, the federal court ordered Occidental to pay The Estate of Soczynski an additional $500,000, plus prejudgment interest. Three, Occidental allegedly incurred additional attorneys' fees litigating the $500,000 versus $1 million dispute.

Occidental seeks indemnity for the second and third items of damage. Occidental insists it seeks only indemnity from IRP, and thus the six-year statute of limitations does not commence until July 30, 2013. Occidental argues, "The entry of the Coverage Action Order was when Occidental first sustained damages, thus triggering Occidental's indemnification rights." (*Pl. Mem., p. 19*)

Occidental argues:

> Minn. Stat. § 541.05, and the applicable limitations period only begins to run after the party seeking indemnification becomes legally obligated to pay the underlying damages as a result of a judgment or settlement. *St. Paul Fire and Marine Ins. Co. v. A.P.I., Inc.,* 738 N.W.2d 401, 409 (Minn. Ct. App. 2007) (citing *Nw. Nat'l Ins. C. ex rel. Swanberg v. Carlson,* 711 N.W.2d 821, 825 (Minn. Ct. App. 2006)).

(*Pl. Mem., p. 18*)

Were Occidental's damages only the "underlying damages" from the Coverage Action (the extra $500,000 and Occidental's claimed attorneys' fees), then Occidental's analysis carries the day. The underlying damages refer to what Occidental incurred in the Coverage Action. Occidental's uncollected premium is not an underlying damage from the Coverage Action.

Occidental's indemnity claim only describes two of the three items of damage. Occidental is not allowed to define when the statute of limitations commences. If Occidental is damaged, the statute of limitations starts.

### Occidental's Case Law.

Occidental's attempt to apply insurance contract law to support its argument that indemnity claims accrue on payment of a judgment or settlement falls short. Unlike in insurance contracts, the indemnification here is based upon IRP negligently including Form AA1903 with a stated limit of $1 million in the O.M.

8

Trucking Policy. In other words, IRP's professional negligence allegedly caused Occidental to pay $500,000 more than was intended by the parties. Thus, the "some damages" rule outlined in *Antone v. Mirviss*, 720 N.W.2d 331 (Minn. 2006) is applicable and Occidental's claims are time barred because it suffered compensable damages in the form of underpaid premiums.

Moreover, the case law Occidental cites actually supports IRP because IRP's duty to indemnify ostensibly accrued on August 1, 2008 in the form of unpaid premiums. To determine whether the statute of limitations has expired on a breach-of-contractual-duty-to-indemnify claim, a court must first determine when the breach of the duty to indemnify occurred. *Nw. Nat'l Ins. Co. ex rel. Swanberg v. Carlson*, 711 N.W.2d 821, 824 (Minn. Ct. App. 2006). The limitations period is triggered when there is a duty to perform and performance is not rendered. *Id*. When actual performance is due is controlled by the contract. *Id*.

In *Swanberg*, the duty to perform (indemnify) was determined based on statutory language which stated that a "liability insurer 'shall be liable to pay, on behalf of the insured, sums which the insured is *legally obligated to pay* as damages…" *Id*. (emphasis added). In other words, Farmers', the liability insurer, duty to indemnify was not triggered until judgment was entered against its insured. *Id*. at 825.

In another insurance case, the court concluded that under the common law, the right of indemnity accrued when the insurer made its first payment of No-Fault benefits to its insured. *Metro. Prop. & Cas. Ins. Co. v. Metro. Transit Comm'n*, 538 N.W.2d 692, 695 (Minn. 1995). The court reasoned that under the common law rule, "the right to indemnity does not accrue until the liability of the party seeking indemnity 'has become finally fixed and ascertained'" and that accrual occurs when "the party seeking indemnification has made payment to the injured person." *Id*. quoting 54 C.J.S. *Limitation of Actions* § 207 (1987).

Here, the indemnification provision encompasses *any* damages, not just payment of settlements. The provision states:

> B.    [IRP] agrees to indemnify and hold [Occidental] harmless for *any damages resulting directly or indirectly* from any…breach of [IRP's] obligations, acts or omissions under this Agreement.

(*See Larkin Aff., Ex. 1, p. 4*) IRP's breach of the Management Agreement resulted in damages in the form of underpaid premiums beginning in August 2008. Following the court's reasoning in *Metropolitan Property*, Occidental's right to indemnity accrued when it was underpaid premiums. IRP's liability was fixed and ascertained when Occidental was paid its premiums albeit because it received less than it was entitled. *Swanberg* is not analogous because the triggering event was dictated by the statutory language (when the insured became "legally obligated to pay"). Here, the indemnification provision is broader.

### *The Statute of Limitations does not start upon Occidental's Discovery of its Compensable Damage against IRP.*

Occidental essentially argues it did not discover the $1 million error in the Monthly Payment and Reporting Endorsement in 2008, and thus the statute of limitations did not begin to run until July 30, 2013. (*Pl. Mem., pp. 20-21*)

First, the test is not when a plaintiff discovers the error. In *Antone v. Mirviss*, 720, N.W.2d. 331 (Minn. 2006), the court identified two ends of a spectrum. On the one end is the occurrence of the error. At the other end of the spectrum is the plaintiff's discovery of the professional's error.

The *Antone* court arrived at a middle ground between these two ends of the spectrum. The statute of limitations begins to run when some damage occurs as a result of the malpractice. (*Id.* at 335-36)

Here, the date of the occurrence of the error and the date of when some damage occurred coincide, August 1, 2008.

Moreover, Occidental had the opportunity to discover the error well before The Estate of Soczynski asserted in September of 2011 that the Policy provides $1 million of liability coverage. Occidental's supervising underwriter, Carol Evers, noticed the August 1, 2010 to August 1, 2011 policy contained the erroneous liability limit of $1 million on the Monthly Payment and Reporting Endorsement. Occidental's underwriting department instructed IRP to delete this endorsement

11

and issue a correcting endorsement reflecting $500,000 of liability coverage. (*Sonnesyn's Second Aff., Ex. Q*: Lindemann Depo., pp. 113-123, Ex. 43)

Occidental's underwriting department apparently did not review the previous policies to ascertain whether the Monthly Payment and Reporting Endorsement stated $1 million of coverage. (*Sonnesyn's Second Aff., Ex. Q:* Lindemann Depo., p. 123, Ex. 43)

IRP did not hide anything from Occidental. Occidental could have discovered the error for its policy in effect August 1, 2008 to August 1, 2009. The discovery rule is inapplicable. The "some damage" rule applies.

III. **ALTERNATIVELY, OCCIDENTAL'S CLAIMS FAIL FOR LACK OF CAUSATION BECAUSE OCCIDENTAL FAILED TO USE REASONABLE DILIGENCE AND GOOD EFFORTS TO MITIGATE ITS LOSSES, THEREFORE, IRP'S MOTION FOR SUMMARY JUDGMENT SHOULD BE GRANTED (AND OCCIDENTAL'S CROSS-MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED)**

"Generally, the party alleging a loss because of a tort or breach of contract has a duty to mitigate damages." *Bass v. Equity Residential Holdings, LLC*, 849 N.W.2d 87, 92 (Minn. Ct. App. 2014). An injured party must use "reasonable diligence and good efforts to minimize its losses." *Deutz-Allis Credit Corp. v. Jensen*, 458 N.W.2d 163, 166 (Minn. Ct. App. 1990); *see also Fraser-Smith Co. v. Chicago, R. I. & P. R. Co.*, 435 F.2d 1396, 1399 (8th Cir. 1971) ("every party must use every reasonable means to lessen the damage caused by another"). "[I]t is well

established in Minnesota that in the case of a breach of contract the injured party must use reasonable diligence to minimize his damages." *Feed Mgmt. Sys., Inc. v. Comco Sys., Inc.*, 823 F.3d 488, 496 (8th Cir. 2016) quoting *Lanesboro Produce & Hatchery Co. v. Forthun,* 218 Minn. 377, 16 N.W.2d 326, 328 (1944).

Occidental cites to no binding case law for the proposition that a failed attempt to mitigate cannot be second-guessed. Moreover, the situations in the cases cited by Occidental for this proposition involve decision making in an abbreviated period of time and involving imminent/time-sensitive issues. *See Ellerman Lines Ltd. v. President Harding*, 288 F.2d 288, 289 (2d Cir. 1961) (decisions made over a weekend regarding removal of cargo from ship which had been struck and damaged by defendant); *APL Co. Pte. Ltd. v. Blue Water Shipping U.S. Inc.*, 779 F. Supp. 2d 358, 362-64 (S.D.N.Y. 2011) (decisions made over a five-month time frame regarding a shipment of fresh garlic that needed to be refrigerated). Unlike the plaintiffs in *Ellerman* and *APL Co.*, Occidental had the luxury of time to determine its available legal remedies and the ability to remedy its decisions through either amending its pleadings or securing the necessary evidence. Moreover, Occidental's sole purpose in filing the declaratory judgment that is the Coverage Action was to determine coverage, not the available limits. *See Coverage Action Compl.*, p. 10 (requesting declaration that Occidental "has not duty to indemnify Hipp or Hipp's Trucking…as a result of the Accident pursuant to the

13

plain language of the Occidental Policy and Non-Trucking Endorsement and Minnesota law").

### *The Expert Opinion of Britt Weimer is not Speculative, does not Opine Regarding Intent, and Provides Opinions Regarding Matters not within the Knowledge or Experience of a Lay Jury.*

Occidental's argument that Britt Weimer's expert opinion should be rejected because it is speculative as to the intentions of other courts is specious. Expert opinion testimony is admissible if it is both relevant and reliable. *Plasti Dip Int'l, Inc. v. Rust-Oleum Brands Co.*, No. 14-CV-1831 (JRT/SER), 2017 WL 914643, *2 (D. Minn. Feb. 13, 2017). Expert opinions are relevant if they are useful to the fact finder in deciding an ultimate issue of fact. *Id.* An expert opinion is reliable if the expert is qualified, and "the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that if the finder of fact accepts it as true, it provides the assistance the finder of fact requires." *Id.* quoting *Lauzon v. Senco Prods., Inc.*, 270 F. 3d 681, 686 (8th Cir. 2001).

The expert testimony that was excluded in *Plasti Dip* is dramatically different from the expert opinion here. In *Plasti Dip* case, the expert was expressing an opinion of the defendant's intent based on the defendant's particular conduct. *Id.* at **3-4. The court excluded the testimony on the basis that the question of corporate intent is a question for the jury, not an expert. *Id.* at *4.

In contrast, Mr. Weimer is not opining as to the intent of the district court or Eighth Circuit in the underlying Coverage Action. Instead, he opines on the likely

outcome of the Coverage Action had Occidental properly argued "reasonable expectations" and pursued reformation based upon his lengthy professional career as an attorney representing parties in similar insurance contract disputes. The very purpose of expert testimony is to retroactively analyze a situation and express an opinion on outcomes if the circumstances were different (e.g. pursuing a specific legal remedy; reducing the temperature setting on a coffee pot; designing and installing a gas tank that will not rupture on impact; identifying cancer earlier).

Expert testimony like Mr. Weimer's is not only permitted, but is required in malpractice claims. *See Fontaine v. Steen*, 759 N.W.2d 672, 677 (Minn. Ct. App. 2009) (holding that expert testimony is needed to establish that but for an attorney's conduct, the client would have been successful in an underlying action); see also *Atwater Creamery Co. v. Western Nat. Mut. Ins. Co.*, 366 N.W.2d 271, 297 (Minn. 1985) ("[T]he rule for doctors and attorneys generally is that both the standard of care and the departure from it must be shown through expert testimony, because for a jury to decide negligence otherwise would be speculative"). If this type of expert testimony is admissible in a malpractice case, it is analogously admissible in this case. Had Occidental pursued the appropriate legal remedies, Occidental would have prevailed on the $500,000 versus $1 million issue. Therefore, Mr. Weimer's expert opinion should be admissible at trial and Occidental has not refuted Mr. Weimer's opinions.

### *Occidental Failed to use Reasonable Diligence and Good Effort to Properly Argue "Reasonable Expectations" in the Coverage Action.*

Under the "reasonable expectations" doctrine, courts should not construe ambiguous policies in a manner that provides coverage limits greater than the amount the insured intended and instead, should conclude that the insured's intended coverage limits prevail. *Curtis v. Home Ins. Co.*, 392 N.W.2d 44, 45 (Minn. Ct. App. 1986).

Occidental has not identified any disputes of material facts regarding the reasonableness of its actions in the underlying Coverage Action. It has not produced any expert opinion to refute Britt Weimer's opinion regarding the unreasonableness of Occidental's actions in the underlying Coverage Action. Therefore, summary judgment should be granted because Occidental failed to mitigate its damages in the Coverage Action.

The fact that Judge Tunheim's Order does not address the lack of evidence regarding Hipp's intentions simply reinforces the deficiency of Occidental's diligence and efforts in the Coverage Action. Specifically, Occidental never argued "reasonable expectations" at the district court level. Occidental's memorandum in opposition to the Soczynski Estate's motion for summary judgment in the Coverage Action dedicates a mere two paragraphs to the issue of the coverage limits and those two paragraphs contain no legal analysis. *See Sonnesyn's Second Aff.*, *Ex. L, p. 6*. The argument focuses solely on the reasonableness of Soczynski's

16

*interpretation* of Policy 12552 (i.e. that Policy 12552 was not ambiguous) and says nothing about party expectations. *Id*. Furthermore, it is unrefuted that had Occidental provided evidence regarding Hipp's intentions, the outcome would have been different. *See Weimer Aff.*, ¶¶ 3-5.

As a result of its failure to argue "reasonable expectations" and to introduce evidence to support the argument at the district court level, Occidental was left with the deficient record on appeal. *See Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 988 F.2d 61, 63 (8th Cir. 1993) (noting that an appellate court will not generally consider evidence that was not in the district court record and noting the rarity of an appellate court enlarging the appellate record). There is no indication Occidental sought to enlarge the appellate record. (*Sonnesyn's Second Aff., Ex. N*) The lack of evidence as to Hipp's intentions was critical to the Eighth Circuit's rejection of Occidental's argument that *Curtis v. Home Insurance Company*, 392 N.W.2d 44 (Minn. Ct. App. 1986), applied and not *Rusthoven v. Commercial Standard Insurance Company*, 387 N.W.2d 642 (Minn. 1986).

In *Rusthoven*, the record did not contain any information as to the parties' intent, other than the policy documents, therefore, the ambiguity was construed against the insurer. 387 N.W.2d at 644. In contrast, the court in *Curtis* had affidavits from the insured (the city) stating its intended coverage limits. 392 N.W.2d at 46. The court in *Curtis* reached a wholly different conclusion than

17

*Rusthoven* because of critical evidence as to the insured's reasonable expectations. *Id*.

In diversity cases, a federal court's role is to interpret state law. *Kingman v. Dillard's, Inc.*, 643 F.3d 607, 615 (8th Cir. 2011). The Eighth Circuit, faced with a record identical to *Rusthoven* (i.e. nothing in the record from the insured, Hipp, indicating his intent) could not have applied *Curtis*. Furthermore, the only reason given by the Eighth Circuit for not applying *Curtis* is the lack of "record evidence…indicating what Thomas Hipp's reasonable expectations were." *See Sonnesyn's First Aff., Ex. F,* p. 11 of Ex. J.

Occidental fails to point to any evidence in the record that refutes Mr. Weimer's expert opinion regarding the likelihood of a different outcome in the Coverage Action had Occidental entered an affidavit or deposition testimony from Mr. Hipp into the record. Because there are no disputes regarding material facts, the only conclusion a reasonable jury could reach is that Occidental's failure to even argue "reasonable expectations" at the district court level and failure to enter admissible evidence of Mr. Hipp's intent into the record was unreasonably imprudent and not a good effort. Therefore, summary judgment is appropriate and Occidental's claims should be dismissed because of its failure to mitigate.

***Occidental's Failure to Assert the Affirmative Defense of Reformation in the Coverage Action was Unreasonable and not in Good Effort.***

In order to reform a contract based on mutual mistake, the evidence before the court must be "clear, unequivocal, and convincing" of the parties' agreement. *Id.* (quoting *Golden Valley Shopping Ctr. Inc. v. Super Value Realty, Inc.*, 256 Minn. 324, 329, 98 N.W.2d 55, 58 (1959)).

Occidental does not dispute that the individuals and entities involved in the formation of Policy 12552 unanimously agree that Policy 12552 was intended to provide $500,000 in liability limits. Not a single party to the Policy disputes the intended coverage. This evidence not only satisfies the "clear and convincing" quantum of proof, but it also satisfies the much higher "proof beyond a reasonable doubt" quantum of proof. No speculation is needed to conclude that any court, including this one, would reform a contract as a matter of law in the face of party consensus. Mr. Weimer's unrefuted expert opinion affirms this conclusion. Notably, Occidental fails to identify a single case where a court refused to reform a contract when there is a consensus amongst the parties as to the intent of the contract.

The district court and the Eighth Circuit in the Coverage Action could not *sua sponte* consider reformation because Occidental waived it as an affirmative defense when it did not plead it in its answer to Soczynski's counterclaim. It is a basic tenet of civil procedure that affirmative defenses are waived if not asserted in

19

an answer and are excluded from the case. Fed. R. Civ. P. 8(c); *Wood v. Milyard*, 566 U.S. 463, 463, 132 S.Ct. 1826, 1832-33, 182 L. Ed. 2d 733 (2012). Therefore, a court cannot *sua sponte* consider a waived defense. *Id*. at fn. 5. Thus, the silence of the Coverage Action orders regarding reformation is immaterial and not compelling.

The only conclusion a reasonable jury could reach is that Occidental was not reasonably diligent and did not use good effort in mitigating its damages because it did not assert the affirmative defense of reformation and had it been asserted, the courts in the Coverage Action would have reformed Policy 12522. Summary judgment is appropriate because Occidental failed to mitigate its damages.

## IV.    OCCIDENTAL APPROVED THE RENEWAL OF THE $1 MILLION POLICY FOR 2008-2009 AND IRP WAS AUTHORIZED TO BIND OCCIDENTAL TO INSURE TRUCKERS, INCLUDING HIPP, TO THE $1 MILLION POLICY

Occidental's memorandum conflates two distinct aspects of the underwriting process regarding the O. M. Trucking Policy—the renewal process and the acceptance (or rejection) of truckers for coverage as insured son the O. M. Trucking Policy.

IRP concedes that it was required to submit the *renewal* of the O. M. Trucking policies each year to Occidental for approval.[1] IRP did and it is

---

[1] Both Occidental's and Olson Insurance's memoranda reference the issuance of Policy 12552 to Hipp's Trucking. Policy 12552 was issued to O.M. Trucking, not Hipp's Trucking. Hipp's Trucking never sought a policy of insurance, but rather, it sought coverage under the policy O. M. Trucking had through Occidental. This distinction is an important one and any references that suggest Policy 12552 was issued to Hipp's Trucking must be ignored.

20

undisputed that Occidental approved the renewal and inception of the $1 million and $500,000 O. M. Trucking policies that provided coverage to insured truckers on March 10, 2009.

Importantly, Occidental does not dispute that the acceptance of truckers as insureds under either the $1 million or $500,000 policies did not require Occidental's approval. It is undisputed that Occidental authorized and granted IRP the power to determine whether truckers seeking a certificate of insurance under either O. M. Trucking policy were qualified for the coverage they sought and to issue certificates of insurance if approved. Occidental's memorandum does not point to any facts which indicate that IRP was required to get Occidental's approval for adding insureds to the O. M. Trucking policies because it cannot. Hipp's history is immaterial to whether IRP had authority to bind Occidental to provide coverage to insured truckers under either O. M. Trucking policy. This is evidenced by Oertli's testimony and the Affidavit of Diane Fuller.

In *Julien v. Spring Lake Park Agency, Inc.*, 166 N.W.2d 355 (1969), the import is the holding, not the factual differences. First, just like the insurer in *Julien*, Occidental was responsible for indemnifying an insured for coverage that it was not aware of due to its agent's error. In *Julien*, the error was the failure of the agent to communicate to the insurer the need for a policy regarding a particular policy. *Id.* at 357. Here, it was the inclusion of Form AA1903. Second, just like the

21

agent in *Julien*, IRP had the authority to accept truckers, including Hipp, as insureds under either O. M. Trucking Policy issued by Occidental, including the $1 million policy.

The court's reasoning for denying the insurer's indemnification claim against the agent in *Julien* applies. IRP had the power to bind Occidental to provide coverage to truckers under both of the O. M. Trucking policies and there is no dispute that Hipp would have been provided coverage under the $1 million policy if requested. In this instance, IRP inadvertently bound Occidental. IRP's inadvertence does not undercut the holding and rationale of *Julien*. Because IRP had the authority to bind Occidental to insure Hipp (or any eligible trucker) for $1 million and Occidental acknowledges Hipp would have been insured under the $1 million policy, Occidental's loss did not result from IRP's error.[2] Therefore, Occidental is not entitled to indemnification from IRP. Summary judgment should be granted in IRP's favor and Occidental's claims dismissed with prejudice.

## V.   ALTERNATIVELY, OCCIDENTAL'S DAMAGES CANNOT BE DETERMINED AS A MATTER OF LAW BECAUSE IT IMPROPERLY ATTRIBUTES PRE AND POST JUDGMENT INTEREST AND COSTS

Occidental erroneously attributes the entirety of the interest it was obligated to pay in the Coverage Action to the disputed limits issue. Occidental did not pay

---

[2] In *Reserve Ins. Co. v. Netzer*, 621 F.2d 314, 317 (8th Cir. 1980), the court applied *Julien* to deny an insurer's indemnity claim against its agent. "To sum up, even if the Ely Agency [the agent] was negligent, the most that can be said is that Reserve [the insurer] was deprived of the additional premium it would have charged." Which brings the analysis back to the fact Occidental incurred some damage effective August 1, 2008. See pp. 7-8, supra.

on the policy covering Hipp because it disputed there was coverage in the first place. *See Coverage Action Compl.* The issue of the amount of the available limits was not present until the counterclaim asserted by the Soczynski Estate in the Coverage Action on September 13, 2011. Therefore, from at least January 12, 2010 until September 13, 2011, the accrual of pre-judgment interest was due entirely to Occidental's denial of coverage. Moreover, the issue of coverage predominated over the limits issue throughout the duration of the Coverage Action. *See IRP's Ex. F* at attached Exs. F, I and J; *Ex. J*; *Ex. K*; *Ex. L*; *Ex. M*; and *Ex. N*. Thus, Occidental has failed to establish which portion of pre- and post-judgment interest and costs correlate to the disputed limits issue versus the disputed coverage issue.

## VI.   THIRD-PARTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED BECAUSE THERE IS A DISPUTE AS TO A MATERIAL FACT – WHETHER THIRD-PARTY DEFENDANTS BREACHED THEIR DUTY OF CARE

Olson Insurance and Oertli argue that there is no Minnesota law stating insurance agents owe brokers a duty of care. They are wrong. The "standard of care for an insurance agent is to perform at the level of skill of a reasonably prudent person in the insurance business. This is an objective rather than a subjective standard." *Gabrielson v. Warnemunde*, 443 N.W.2d 540, 545 (Minn. 1989). The duty includes duties imposed in an agency relationship, including acting in good faith. *Id*. at 544. Olson Insurance and Oertli may argue that this duty

23

is owed only to an insured/client. However, there is nothing in *Gabrielson* or related case law which limits to whom insurance agents owe their duties.

Jeffrey Maas provides expert opinion on the applicable standard of care in the context of multi-tier insurance transaction. Olson Insurance and Oertli's expert disagrees with Mr. Maas's opinion. This is a classic dispute of a material fact for the trier-of-fact. Olson Insurance and Oertli's motion for summary judgment should be denied.

Olson Insurance owed IRP the duty of good faith and fair dealing inherent in business relationships. "Ordinary business relationships may involve reliance on a professional, a degree of trust, and a duty of good faith." *St. Paul Fire & Marine Ins. Co. v. A.P.I., Inc.*, 738 N.W.2d 401, 406 (Minn. Ct. App. 2007).  Good faith is defined as "observance of reasonable commercial standards of fair dealing in a given trade or business." *GOOD FAITH, Black's Law Dictionary* (10th ed. 2014). Occidental paid 20% commission for the sale and servicing of the Policy. Olson Insurance received 15%; IRP received 5%. (*Fuller's Second Aff.*)

By sharing with IRP the commission paid by Occidental, Olson Insurance was obligated to service the O.M. Trucking account in a reasonable manner on behalf of both the insured and IRP. (*Maas Suppl. Aff., ¶3*) Moreover, by accepting the commission, Olson Insurance implicitly indicated it abided by the duty of good faith and fair dealing. Olson Insurance breached its duty of good faith when it

24

failed to review the policy document to ensure they met with the intended coverage.

## CONCLUSION

Interstate Risk Placement, Inc. requests the court grant its Motion for Summary Judgment dismissing Occidental's Complaint. Alternatively, Interstate Risk Placement requests the court deny Occidental's Motion for Summary Judgment because there are questions of material fact.

Interstate Risk Placement requests the court deny Olson Insurance Agency's Motion for Summary Judgment because there are questions of material fact.

*Respectfully submitted,*

Dated: October 10, 2017 /s/ Rolf E. Sonnesyn
Rolf E. Sonnesyn (#0131027)
Beth L. LaCanne, Esq. (#0397023)
**TOMSCHE, SONNESYN & TOMSCHE, P.A**
610 Ottawa Avenue North
Minneapolis, MN 55422
(763) 521-4499
rsonnesyn@tstlaw.com
blacanne@tstlaw.com

***Attorneys for Defendant and Third-Party Plaintiff Interstate Risk Placement, Inc.***

25