UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| OCCIDENTAL FIRE & CASUALTY COMPANY OF NORTH CAROLINA, | Case No. 16-CV-1174 (PJS/LIB) |
| Plaintiff, | |
| v. | |
| INTERSTATE RISK PLACEMENT, INC., | ORDER |
| Defendant and Third-Party Plaintiff, | |
| v. | |
| OLSON INSURANCE AGENCY, INC.; and MARY OERTLI, | |
| Third-Party Defendants. | |

Patrick J. Larkin, LIND, JENSEN, SULLIVAN & PETERSON, P.A., for plaintiff Occidental Fire & Casualty Company of North Carolina.

Rolf E. Sonnesyn and Beth L. LaCanne, TOMSCHE, SONNESYN & TOMSCHE, P.A., for defendant and third-party plaintiff Interstate Risk Placement, Inc.

Ken D. Schueler and Jennifer M. Peterson, DUNLAP & SEEGER, P.A., for third-party defendants Olson Insurance Agency, Inc., and Mary Oertli.

Plaintiff Occidental Fire & Casualty Company of North Carolina ("Occidental")

is an insurance company. Defendant Interstate Risk Placement, Inc. ("Interstate")

served as Occidental's general agent, with authority to issue policies on Occidental's

behalf.  In August 2008, Interstate issued a liability policy to a trucker named Thomas

Hipp, who purchased the policy through his agents, third-party defendants Olson

Insurance Agency, Inc. and Mary Oertli (collectively "Olson").  Consistent with his

longstanding practice, Hipp asked for $500,000 in coverage, and everyone involved in

the transaction—Hipp, Olson, Interstate, and Occidental—intended that the coverage

limits of Hipp's policy be $500,000.

Months later, Hipp was involved in a collision in which the other driver was

killed.  In the wake of the accident, Hipp's insurance policy was closely examined, and a

typographical error was discovered:  Hipp's coverage limits were incorrectly identified

as $1 million in one of the endorsements.  Hipp's coverage limits were correctly

identified as $500,000 in the declarations page, in the certificate of insurance issued to

Hipp, and in every other document related to the policy.

The typographical error proved costly to Occidental.  In later coverage litigation,

Hipp's policy was found to be ambiguous because of the typographical error, that

ambiguity was resolved against Occidental, and Occidental was ordered to pay

$1 million to the estate of Hipp's victim.  Occidental then filed this lawsuit against

Interstate.  Occidental argues that Interstate is responsible for the typographical error;

that, but for the error, Occidental would have owed the estate of Hipp's victim only

$500,000; and that Interstate must now indemnify Occidental for the extra $500,000 under the terms of the agency agreement between the parties.

Interstate admits that it is responsible for the typographical error; that the error was a but-for cause of $500,000 in damages to Occidental; and that, as a general matter, Interstate is contractually obligated to indemnify Occidental for damages caused by Interstate's errors.  Interstate argues, however, that Occidental cannot recover the extra $500,000 from Interstate because Occidental failed to reasonably mitigate its damages. Specifically, Interstate contends that the lawyer who represented Occidental in the coverage litigation failed to competently argue that coverage was limited to $500,000 under the reasonable-expectations doctrine—that is, Minnesota case law holding that an ambiguous insurance policy cannot be construed to provide coverage that is "beyond the reasonable expectations of the insured." *Rusthoven v. Commercial Standard Ins. Co.*, 387 N.W.2d 642, 645 (Minn. 1986).  Had the lawyer done so, Interstate contends, Occidental would not have been ordered to pay the extra $500,000 to the estate of Hipp's victim.

This matter is before the Court on the parties' summary-judgment motions.  For the reasons that follow, the Court agrees with Interstate that Occidental failed to act reasonably in mitigating its damages, and the Court therefore finds that Interstate is not required to indemnify Occidental for the extra $500,000.  Instead, the Court finds that

Interstate is required to indemnify Occidental only for the amount of attorney's fees that Occidental incurred in litigating the question of whether the coverage limits of Hipp's policy were $500,000 or $1 million.

The Court takes no pleasure in its holding. Occidental was poorly served by Interstate, which necessitated Occidental's involvement in coverage litigation in the first place. Occidental was then poorly served by the attorney who represented it in that coverage litigation, which resulted in Occidental having to pay $1 million to the estate of Hipp's victim when it should have had to pay only $500,000. Ultimately, however, Occidental is responsible for the mistakes of its agents.[1]

## I.  BACKGROUND

Occidental is an insurance company owned by IAT Insurance Group. Lindemann Dep. 15. Occidental offers a variety of insurance products, including liability insurance for commercial truckers. *Cf.* Lindemann Dep. 181.

Interstate is an insurance agency. It issues insurance policies on behalf of Occidental and other insurance companies. Sutton Dep. 29-30, 41. For many years, Interstate operated as a managing general agent for Occidental. Sutton Dep. 17-18; Lindemann Dep. 16. Occidental authorized Interstate to "receive and accept proposals

---

[1]To be clear: The attorney representing Occidental in this litigation (Patrick J. Larkin) was not involved in the declaratory-judgment action and was in no way responsible for the mishandling of that action.

for insurance; to effect, issue, countersign and deliver" insurance policies for

Occidental; to "collect" and "receive" premiums for those policies; and "to cancel or

non-renew" those policies at its discretion.  Larkin Aff. Ex. 1 at 1.  Interstate was paid a

commission for its services, and Interstate agreed to indemnify Occidental "for any

damages resulting directly or indirectly from any . . . breach of [Interstate's] obligations,

acts or omissions under this Agreement, whether intentional or not."  *Id.* at 2, 4.

Olson is an insurance broker and retail agent owned by Oertli.  Oertli Dep. 22;

Fuller Dep. 17, 19, 22; Lindemann Dep. 16.  Olson worked with general agents such as

Interstate to place insurance coverage for commercial truckers.  Oertli Dep. 24-25;

Sutton Dep. 41.  When a new policy was issued to a trucker by Interstate on behalf of

Occidental, Olson would receive a courtesy copy of that policy, and Olson would send a

copy of the insurance certificate to the trucker.  Olson would also collect premiums

from the trucker and remit those premiums to Interstate.  Oertli Dep. 117, 135-40,

148-49.

Hipp is a trucker who hauled cargo for Airline Transportation Specialists, Inc.

("ATS").  ATS purchased insurance from Great West Casualty Company ("Great

West"), and that insurance covered Hipp when he was acting on behalf of ATS.

*Occidental Fire & Cas. Co. of N.C. v. Soczynski*, No. 11-CV-2412 (JRT/JSM), 2013 WL

101877, at *1-3 (D. Minn. Jan. 8, 2013) (*Occidental I*), *aff'd*, 765 F.3d 931 (8th Cir. 2014).

ATS also required Hipp to purchase "bobtail" insurance coverage—that is, insurance that covered Hipp when he was driving his truck for personal reasons. *Id.*; Lindemann Dep. 25-26.

Hipp[2] purchased bobtail insurance from Occidental in 2003 and every year thereafter, always seeking and always receiving $500,000 in coverage. Hipp Dep. 13-21; Oertli Dep. 45-61. In August 2008, Hipp renewed his insurance for the period August 1, 2008, to August 1, 2009. Oertli Dep. 61-63. As usual, Hipp asked for $500,000 of coverage. Hipp Dep. 22-24. As usual, Hipp paid for $500,000 of coverage. Lindemann Dep. 26, 54, 86, 93, 100. And as usual, Hipp thought that he had received $500,000 of coverage. Hipp Dep. 24. Indeed, *everyone* involved in the transaction—Hipp, Olson, Interstate, and Occidental—believed that Hipp had received $500,000 in coverage. Hipp Dep. 24 (Hipp); Oertli Dep. 77-78, 80-82, 130-32 (Olson); Sutton Dep. 88-89, 103, 106-07, 127 (Interstate); Fuller Dep. 45-48, 73-74 (Interstate); Lindemann Dep. 205-06 (Occidental).

The declarations page of Hipp's policy correctly identified the coverage limits as $500,000, as did the certificate of insurance issued to Hipp and various other documents

---

[2]Technically, the insurance policy was issued to a company called "O.M. Trucking." But O.M. Trucking was just a shell corporation that allowed individual truckers to associate together to get a group rate on their insurance. Lindemann Dep. 30; Oertli Dep. 20. Hipp was the sole owner of a company called Hipp's Trucking, and Hipp's Trucking was a member of O.M. Trucking. Oertli Dep. 20-21; Hipp. Dep. 7. As a practical matter, then, the policy was Hipp's.

issued in connection with the policy.  Hipp Dep. 21; Oertli Dep. 56-68; Sutton Dep. 103; Lindemann Dep. 80-81.  But one of the endorsements to the policy incorrectly identified the coverage limits as $1 million.  Oertli Dep. 77-78.  That was a mistake.  It is undisputed that "everybody thought this was a $500,000 policy," and "it should have been a $500,000 policy but for the mistake that happened."  Sutton Dep. 89.

In March 2009, Hipp was driving his truck when he crossed the center line of a two-lane road and crashed into an SUV driven by Amy Soczynski.  *Occidental I*, 2013 WL 101877, at *4.  Soczynski was killed.  Her estate sued ATS (insured by Great West) and Hipp (insured by Great West and Occidental) in state court.  Great West tendered its policy limits of $1 million to the estate, but Occidental denied coverage, arguing that, at the time of the accident, Hipp was driving on behalf of ATS and therefore was not covered under the bobtail policy.

Occidental brought a declaratory-judgment action against Soczynski's estate and Hipp, seeking a declaration that its bobtail policy did not provide any coverage to Hipp in connection with the accident that killed Soczynski.  The estate moved for summary judgment that Hipp was covered by Occidental's bobtail policy at the time of the accident.  The estate also sought summary judgment that the policy limits were $1 million.  The estate argued that the typographical error created an ambiguity

regarding the amount of coverage and that the ambiguity had to be resolved against Occidental.

In responding to the estate's summary-judgment motion, Occidental devoted almost its entire brief to arguing that Hipp was not covered *at all* by the bobtail policy because he was working for ATS at the time of the accident.  Occidental devoted just two paragraphs—comprising less than one page of its brief—to arguing that *if* Hipp was covered, the coverage limits were $500,000.  Case No. 11-CV-2412, ECF No. 21 at 6. In those two paragraphs, Occidental argued simply that because the policy limits were identified as $1 million only once in an endorsement, and because the policy limits were identified as $500,000 on the declarations page, on the certificate of insurance issued to Hipp, and in other documents related to the policy, "[t]he only reasonable reading of the Occidental Policy is that the limit of coverage is $500,000."  *Id.*

Inexplicably, Occidental did not argue—even in the alternative—that under Minnesota law, the result of any construction of an ambiguous policy "must not be beyond the reasonable expectations of the insured."  *Rusthoven*, 387 N.W.2d at 645.  And Occidental did not submit any admissible evidence regarding Hipp's expectations. Indeed, even though Hipp was deposed twice, Occidental failed to ask him a single question about his expectations.

Judge John R. Tunheim granted the estate's summary-judgment motion.  Almost all of Judge Tunheim's lengthy order was devoted to explaining why he found that Hipp was covered under the Occidental policy at the time of the accident.  *Occidental I*, 2013 WL 101877, at *1-15.  But in two brief paragraphs at the end of his order, Judge Tunheim found that the coverage limits of the Occidental policy were $1 million, not $500,000.  Judge Tunheim's analysis was perfunctory, reflecting the perfunctory manner in which Occidental had briefed the issue:

> The inconsistencies in the policy create an irreconcilable conflict and render the policy ambiguous.  *See Rusthoven*, 387 N.W.2d at 644-45.  The Court construes this ambiguity in favor of Hipp and concludes that the Occidental policy limit is $1,000,000.  *See id.* at 645.  The Court further concludes that construing the Occidental policy to provide liability coverage of $1,000,000 does not exceed the reasonable expectations of Hipp.  *See id.* (concluding that resolving a conflict between liability limits of $25,000 and $1,675,000 in favor of the larger limit did not exceed the reasonable expectations of the insured).

*Id.* at *15.

Notably, in support of his conclusion "that construing the Occidental policy to provide liability coverage of $1,000,000 does not exceed the reasonable expectations of Hipp," Judge Tunheim did not cite a single piece of evidence about Hipp's expectations, no doubt because the record did not contain a single piece of evidence about Hipp's expectations.  Instead, Judge Tunheim cited *Rusthoven*, a case in which the Minnesota

Supreme Court found a policy to be ambiguous because it identified two different coverage limits, resolved the ambiguity in favor of the higher limits, and in a single sentence declared that the higher limits did not "exceed the reasonable expectations of the insured"—also without citing a single piece of evidence about the insured's expectations. *Rusthoven*, 387 N.W.2d at 645.

Occidental appealed Judge Tunheim's order to the Eighth Circuit.  Occidental's briefing before the Eighth Circuit, like its briefing before Judge Tunheim, overwhelmingly focused on the issue of whether Hipp was covered *at all* under the Occidental policy.  Again, Occidental argued that Hipp was acting on behalf of ATS at the time of the accident, and therefore he was not covered by the bobtail policy.  The Eighth Circuit disagreed, holding that "the district court correctly determined Occidental failed to carry its burden of showing Hipp was acting 'for or on the behalf of' ATS at the time of the accident." *Occidental Fire & Cas. Co. v. Soczynski*, 765 F.3d 931, 936 (8th Cir. 2014) (*Occidental II*).

Occidental also argued that the coverage limits were $500,000, not $1 million.  In support of its argument, Occidental for the first time briefed the reasonable-expectations doctrine.  The problem for Occidental was that it had neglected the reasonable-expectations doctrine in the district court, and thus the record contained no admissible evidence regarding Hipp's expectations.  Not surprisingly, then, the Eighth

Circuit rejected Occidental's argument, explaining that it could not find that $1 million in coverage was beyond the reasonable expectations of Hipp when the record contained no admissible evidence about the reasonable expectations of Hipp. *Id.* at 936-38. The Eighth Circuit therefore affirmed Judge Tunheim's determination that Occidental owed Soczynski's estate $1 million.

Occidental then brought this action against Interstate, seeking indemnification for the extra $500,000 that it had to pay because of Interstate's typographical error. Interstate brought a third-party complaint against Olson. All of the parties have moved for summary judgment.

## II.  STANDARD OF REVIEW

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute over a fact is "material" only if its resolution might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* at 255.

## III.  ANALYSIS

### A.  Occidental's Claim Against Interstate

None of the material facts are in dispute.  Interstate is responsible for the typographical error in the endorsement.  If Interstate had not made that typographical error, Occidental would not have had to pay $1 million to Soczynski's estate; instead, it would have had to pay $500,000.  Interstate is contractually obligated to indemnify Occidental for any damages that Occidental suffers on account of an error or omission by Interstate.  But no matter how Interstate's error is characterized—whether as a breach of contract, or as a tort, or as professional malpractice—Occidental had a duty to mitigate its damages.  *See Lesmeister v. Dilly*, 330 N.W.2d 95, 103 (Minn. 1983) ("Lesmeister argues strongly that his damages, being contractual in nature, should not be reduced by any percentage of fault attributable to him.  However, Lesmeister . . . was under a duty to take reasonable steps to mitigate his damages."); *Deutz-Allis Credit Corp. v. Jensen*, 458 N.W.2d 163, 166 (Minn. Ct. App. 1990) ("It is a well-settled principle of contract law that a nonbreaching party is duty-bound to use reasonable diligence to mitigate damages."); *Bass v. Equity Residential Holdings, LLC*, 849 N.W.2d 87, 92 (Minn. Ct. App. 2014) ("Generally, the party alleging a loss because of a tort or breach of contract has a duty to mitigate damages.").

"The general law on mitigation is that the wronged party must use 'reasonable diligence and good efforts.'"  *Bass*, 849 N.W.2d at 92 (quoting *Deutz-Allis Credit Corp.*, 458 N.W.2d at 166).  In this case, Occidental is the "wronged party," and Occidental was thus required to act reasonably to mitigate the harm caused by Interstate's typographical error.  Specifically, Occidental was required to competently litigate the declaratory-judgment action, so that it would not be required to pay the extra $500,000 to Soczynski's estate.

Occidental did not competently litigate the declaratory-judgment action.  In that action, Soczynski's estate argued that because the Occidental policy identified the policy limits both as $500,000 and $1 million, the policy was ambiguous, and the ambiguity should be resolved in favor of the higher limit.  Both Judge Tunheim and the Eighth Circuit accepted this argument, citing *Rusthoven* for the proposition that "[u]nder Minnesota law, if an insurance policy contains endorsements that state different liability limits, these irreconcilably inconsistent provisions create an ambiguity and the larger limit controls."  *Occidental I*, 2013 WL 101877, at *15; *see also Occidental II*, 765 F.3d at 937.

But as both Judge Tunheim and the Eighth Circuit recognized—and as *Rusthoven* made clear—this proposition is limited in a crucial way:  "Construing the ambiguity created by conflicting liability limits in favor of the insured must not . . . 'exceed the reasonable expectations of the insured.'"  *Occidental I*, 2013 WL 101877, at *15 (quoting

*Rusthoven*, 387 N.W.2d at 645); *see also Occidental II*, 765 F.3d at 937 (quoting the same passage from *Rusthoven*).

This "reasonable-expectations doctrine" has been a fixture of Minnesota law since at least 1985. *See Atwater Creamery Co. v. W. Nat'l Mut. Ins. Co.*, 366 N.W.2d 271 (Minn. 1985). And the doctrine has often been successfully deployed on behalf of insurers who found themselves in the same position as Occidental. For example, in *Curtis v. Home Insurance Co.*, an insurance policy that covered 99 vehicles owned by a municipality had two provisions that identified the limit of liability of underinsured motorist coverage. 392 N.W.2d 44, 45 (Minn. Ct. App. 1986). One provision identified the limit as $50,000. The other identified the limit as $4.95 million (i.e., "the sum of the limits applicable to each covered auto"). *Id.*

The problem was easily fixed by the insurance company. The insurer simply submitted affidavits in which the insured (that is, officials of the municipality) affirmed that "the city intended the maximum amount of underinsured motorist coverage available for any one accident would be $50,000." *Id.* at 46. Because the insurer established through admissible evidence that "[t]here was no expectation that the limit of liability would be greater than $50,000," the Minnesota Court of Appeals held that the policy limits were $50,000, not $4.95 million. *Id.*

-14-

Occidental could have followed the lead of the insurer in *Curtis*. Inexplicably, however, the briefing that Occidental submitted to Judge Tunheim did not even *mention* the reasonable-expectations doctrine—or cite *Rusthoven*, *Curtis*, or any other case discussing the doctrine. On appeal, Occidental switched course and relied heavily on the doctrine (citing both *Rusthoven* and *Curtis*). But it was too late. The doctrine turns on the reasonable expectations of the insured, and the record contained no admissible evidence about the reasonable expectations of Hipp.

This was inexcusable. Occidental deposed Hipp twice in the course of the declaratory-judgment action. Hipp Dep. 9-11. In neither deposition did Occidental ask Hipp a single question about his expectations. There is no need to speculate about what Hipp's answer would have been. Hipp was deposed in *this* action, and he readily and repeatedly confirmed under oath that he intended to purchase—and expected to receive—only $500,000 in coverage:

> Q.   The $500,000 coverage limit, was that your intent and the intent of Hipp's Trucking, Inc., in terms of the amount of liability coverage on that Volvo [i.e., the truck Hipp was driving at the time of the accident]?
>
> A.   Yes. . . .
>
> Q.   And when Mary Oertli or somebody from Olson Insurance Agency prepared this Automobile Loss Notice, the $500,000 liability [referred to in the notice], was that consistent with your understanding of how

much insurance coverage you and Hipp's Trucking
had on that 2009 Volvo?

A.     Yes.  As far as I remember. . . .

Q.     And the $500,000 limit on the 2009 Volvo.  Again, is
that consistent with your memory and understanding
of how much insurance coverage Hipp's Trucking
and you had on that 2009 Volvo?

A.     Yes.

Q.     And that was your intent and the intent of Hipp's
Trucking, Inc., $500,000.  Is that right?

A.     Yes.

Hipp. Dep. 22-24.

There is no reason to believe that Hipp would have testified differently if

Occidental had asked him about his expectations at either of his depositions in the

declaratory-judgment action.  For one thing, Hipp could not credibly have claimed that

he expected to receive more than $500,000 in coverage.  Hipp had purchased bobtail

insurance from Occidental for many years.  He always sought $500,000 in coverage, and

he always paid for $500,000 in coverage (both before and after the accident).  Hipp Dep.

13-21; Oertli Dep. 45-61.  Moreover, the declarations page of Hipp's policy correctly

identified the coverage limits as $500,000, as did every other document issued in

connection with the policy (save for the one endorsement with the typographical error).

Hipp Dep. 21; Oertli Dep. 56-68; Sutton Dep. 103; Lindemann Dep. 80-81.

In addition, Hipp had no reason to lie under oath in the course of the declaratory-judgment action.  By the time that Occidental filed that action, the underlying personal-injury action had settled.  As part of that settlement, Hipp had agreed to have a judgment entered against him, and Soczynski's estate had agreed that it would not execute the judgment "against the personal, individual, or business assets or holdings of . . . Thomas Hipp and Hipp's Trucking Inc."  Case No. 11-CV-2412, ECF No. 13-1 at 9.  In other words, Soczynski's estate agreed to collect the judgment only from Occidental.  Thus, Hipp had no personal stake in the dispute between Occidental and Soczynski's estate about the amount of the policy limits.

Finally, there is little doubt that, had Occidental asked Hipp about his expectations, made his response part of the record, and argued the reasonable-expectations doctrine, Occidental's liability would have been limited to $500,000.  The Eighth Circuit's decision cannot be read any other way.  As noted, when Occidental invoked the reasonable-expectations doctrine on appeal, it could not (because of its own negligence) cite any testimony from Hipp to support its argument that he expected only $500,000 in coverage.  The best that Occidental could do was to cite a January 2011 letter written by the attorney for Soczynski's estate, in which letter the estate's attorney expressed his preliminary understanding that Occidental provided only $500,000 in

coverage.  *Occidental II*, 765 F.3d at 937.  The Eighth Circuit responded to Occidental's

argument as follows:

> Occidental contends—similar to the situation
> involved in *Curtis*—there is record evidence in this case
> indicating exactly what the insured's reasonable
> expectations were with respect to the bobtail policy's
> coverage limits.  Occidental relies solely upon a settlement
> letter prepared by [the estate's] attorney in January 2011.
> [The estate's] attorney represented that the information
> provided to him indicated the coverage limits for the bobtail
> policy were $500,000.  Occidental contends [the estate's]
> attorney's settlement letter demonstrates exactly what
> Thomas Hipp's reasonable expectations were with respect to
> the policy limits.  We disagree.
>
> Unlike the situation involved in *Curtis*, there is no
> affidavit directly from Thomas Hipp stating that he intended
> his bobtail policy limits to be $500,000.  Nor is Hipp even
> directly identified as the personal source of the hearsay
> referenced by the plaintiff's attorney in the settlement letter
> with respect to the policy limits.  Thus, contrary to
> Occidental's contention, there is no record evidence in this
> case indicating what Thomas Hipp's reasonable expectations
> were.  The district court therefore did not err when it
> construed the admittedly ambiguous policy against
> Occidental to conclude it provided $1 million in coverage.

*Id.* at 937-38.

In short, the Eighth Circuit identified *exactly* why Occidental lost its argument

that its policy limits were $500,000:  because there was "no record evidence . . .

indicating what Thomas Hipp's reasonable expectations were."  *Id.* at 938.  Had

Occidental developed that "record evidence" by asking Hipp at his deposition "what

[his] reasonable expectations were," the Eighth Circuit (and undoubtedly Judge
Tunheim) would have heeded *Rusthoven*'s directive that construction of ambiguous
policy limits "must not be beyond the reasonable expectations of the insured."
*Rusthoven*, 387 N.W.2d at 645.  Occidental would not have been ordered to pay the extra
$500,000 to Soczynski's estate.

Occidental has failed to provide any plausible excuse for its mishandling of the
declaratory-judgment action.  The attorney who represented Occidental in that action
has remained mum.  At his deposition—where he was represented by Richard Thomas,
one of the leading legal-malpractice attorneys in Minnesota—the attorney refused to
answer questions about why he did not ask Hipp about his expectations.  Instead of
trying to defend his actions, the attorney took refuge behind aggressive assertions of the
(waivable) work-product doctrine:

> Q.   And the Eighth Circuit stated, and I'm quoting from
> its opinion, unlike the situation involved in *Curtis*,
> there is no affidavit directly from Thomas Hipp
> stating that he intended his bobtail policy limits to be
> $500,000.  Is there a reason there is no affidavit or
> testimony from Mr. Hipp to that effect in the
> declaratory judgment lawsuit?
>
> MR. THOMAS:  I'm going to instruct you not
> to answer on the basis that it may be attorney
> work-product doctrine. . . .

> Q.      . . . Did you ask [Hipp] the question about his intent
> as to the amount of coverage he had on the Occidental
> policy for liability limits? . . .
>
> A.      I don't believe I asked him that question.
>
> Q.      Why not?
>
>          MR. THOMAS:  Don't answer that question
> because it invades the attorney work-product
> doctrine.

Myers Dep. 43, 46-47.

That put the onus on Occidental's corporate representative, Julie Lindemann, to

try to defend the company's mishandling of the declaratory-judgment action.  At her

deposition, Lindemann complained that Interstate had refused to voluntarily provide

an affidavit for use in the declaratory-judgment action, and therefore "we weren't able

to prove the intent of the parties."  Lindemann Dep. 144-145.  But parties to a civil action

do not get to choose whether to provide testimony; Occidental could have subpoenaed

the relevant Interstate employees and taken their depositions.  Given the undisputed

facts summarized above, there is no reason to believe that, had Interstate employees

been asked at depositions about their expectations, they would have said anything

other than what was obvious and what they later said when they were deposed in this

action:  Interstate intended the policy limits to be $500,000.  Sutton Dep. 88-89, 103,

106-07, 127 (Interstate); Fuller Dep. 45-48, 73-74 (Interstate).

More importantly, the reasonable-expectations doctrine turns on the expectations of the *insured*.  The insured was Hipp, not Interstate.  The fatal flaw in Occidental's case identified by the Eighth Circuit was not the absence of record evidence of Interstate's intent, but the absence of "record evidence . . . indicating what Thomas Hipp's reasonable expectations were."  *Occidental II*, 765 F.3d at 937-38.

As to Hipp, Lindemann testified that, although she "did not make the decision to not pursue an affidavit"—and she did not even "know whether or not an affidavit was pursued"—her "understanding" was that Hipp was unwilling to provide an affidavit because he "did not want to be involved" in the declaratory-judgment action.  Lindemann Dep. 146.  But Hipp *was* involved in the declaratory-judgment action; he was a *party* to that litigation, and he was deposed twice in the course of that litigation.  Lindemann either could not or would not explain why Occidental's trial counsel did not simply ask Hipp about his expectations.  Nor did Lindemann suggest that she had any reason to believe that, if Hipp had been asked about his expectations, Hipp would have said anything other than what was obvious and what he later said when he was deposed in this action:  He expected only $500,000 in coverage.  Hipp. Dep. 22-24.

In sum, Occidental had a duty to act reasonably in mitigating its damages by competently litigating the declaratory-judgment action.  Competently litigating the declaratory-judgment action meant, at a minimum, obtaining sworn testimony from

Hipp about his expectations and then using that testimony in arguing the reasonable-expectations doctrine.[3]  The Eighth Circuit's decision leaves little doubt that, had Occidental done so, Occidental would not have been required to pay the extra $500,000 to Soczynski's estate.  Because Occidental failed to act reasonably in mitigating its damages, Interstate is not liable for the extra $500,000.

That said, the fact that Occidental failed to mitigate its damages does not completely exonerate Interstate.  "A failure to attempt to mitigate damages will not bar plaintiff entirely from a recovery, but will only prevent the recovery of such damages as might have been avoided by reasonable efforts upon his part."  *Apex Min. Co. v. Chi. Copper & Chem. Co.*, 340 F.2d 985, 987 (8th Cir. 1965) (citation omitted).  Because of Interstate's mistake, Occidental was required to incur attorney's fees to litigate the question of whether the coverage limits of Hipp's policy were $500,000 or $1 million.  There is nothing Occidental could have reasonably done to avoid incurring those fees.

---

[3]Interstate argues that competently litigating the declaratory-judgment action also required Occidental to seek reformation of the insurance policy.  The Court is not so sure.  To succeed in reforming the policy, Occidental would have had to prove, among other things, that the failure of the policy to express the real intentions of the parties "was due to a mutual mistake of the parties, or a unilateral mistake accompanied by fraud or inequitable conduct by the other party."  *Nichols v. Shelard Nat'l Bank*, 294 N.W.2d 730, 734 (Minn. 1980).  The mistake in the Occidental policy appears to have been unilateral, and there is no evidence of fraud or inequitable conduct by Hipp.

At the summary-judgment hearing, Interstate conceded that it would have to reimburse Occidental for those attorney's fees. Occidental estimates that those fees total $15,000—and Interstate does not seem to regard that estimate as unreasonable—but there is insufficient evidence in the record for the Court to enter judgment. The Court asks the parties to try to reach agreement on the amount of fees and submit a stipulation. If the parties are unable to agree, the Court will set the matter for trial.[4]

### B.  Interstate's Claim Against Olson

Interstate filed a third-party complaint against Olson, claiming that Olson was at fault for not reviewing Hipp's policy and catching Interstate's typographical error. But at the summary-judgment hearing, Interstate said that it would not pursue any claim against Olson if the Court held that Interstate did not have to indemnify Occidental for the extra $500,000 paid to Soczynski's estate.

Even if Interstate had not made that concession, the Court would dismiss Interstate's third-party complaint against Olson. Interstate has not cited any Minnesota case holding that a retail agent owes a managing general agent a duty of care to review an insurance policy issued by the managing general agent. Nor is there any evidence that Interstate asked Olson to review Interstate's policies, or that Olson told Interstate

---

[4]Because the Court agrees with Interstate that Occidental failed to mitigate its damages, the Court need not address Interstate's statute-of-limitations defense or its argument that Occidental's damages should be limited to the difference in premiums under *Julien v. Spring Lake Park Agency Inc.*, 166 N.W.2d 355 (1969).

that it would review Interstate's policies.  The Court therefore dismisses all claims

against Olson.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1.      Interstate's motion for summary judgment [ECF No. 39] is GRANTED IN

PART AND DENIED IN PART as follows:

a.      Interstate is not required to indemnify Occidental for the extra

$500,000 that Occidental was required to pay to Soczynski's estate.

b.      Interstate is required to indemnify Occidental for the amount of

attorney's fees that Occidental incurred in litigating the question of

whether the coverage limits of Hipp's policy were $500,000 or

$1 million.

2.      Olson's motion for summary judgment [ECF No. 45] is GRANTED.

Interstate's third-party complaint against Olson Insurance Agency, Inc.,

and Mary Oertli is DISMISSED WITH PREJUDICE AND ON THE

MERITS.

3.      Occidental's motion for summary judgment [ECF No. 50] is DENIED.

Dated: July 2, 2018                     s/Patrick J. Schiltz
                                        Patrick J. Schiltz
                                        United States District Judge